STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert Darnell BEETS, Defendant-Appellant-Petitioner.†

Supreme Court

*No. 84–1053–CR. Submitted on briefs May 29, 1985.—*
*Decided June 24, 1985.*

(Also reported in 369 N.W.2d 382.)

† Motion for reconsideration pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant-petitioner there was a brief by *Michael Dwyer*, Madison, and Legal Assistance to Institutionalized Persons Program.

For the plaintiff-respondent there was a brief (in court of appeals) by *Marguerite M. Moeller*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

HEFFERNAN, Chief Justice. This is a review of an unpublished decision of the court of appeals which affirmed an order of the circuit court for Milwaukee county, Victor Manian, circuit judge, denying the motion of Robert Darnell Beets for additional days of credit toward the satisfaction of time served on a conviction for burglary.

The issue presented is whether a person who is on probation for an earlier crime (delivery of controlled substance), is apprehended for the commission of a

new and separate crime (burglary), and then, after a period of custody on a probation violation hold, is revoked and is sentenced to state prison on the earlier drug crime is entitled to time credit on the burglary sentence for the days served under the prison sentence for the drug crime while awaiting trial and eventual sentencing on the second crime—the crime of burglary.

We conclude that Beets is not entitled to time credit on the burglary sentence for the period following the sentence on the drug charge. We therefore affirm, concluding that sec. 973.155(1), Stats. 1981–82, does not require that the credit be given.[1]

Robert Darnell Beets, on June 26, 1982, was at liberty on probation resulting from his conviction on October 21, 1981, on two charges of delivering a controlled substance (drug charges). After May 5, 1982, he had failed to report to the probation authorities. On June 26, 1982, he was arrested for burglary and was taken into custody, initially only on that charge. Within a few days, he was also in custody on a probation hold resulting from the alleged violation of his probation on the earlier

[1] "973.155 **Sentence credit.** (1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, 'actual days spent in custody' includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

"1. While the offender is awaiting trial;

"2. While the offender is being tried; and

"3. While the offender is awaiting imposition of sentence after trial.

"(b) The categories in par. (a) include custody of the convicted offender which is in whole or in part the result of a probation or parole hold under s. 57.06(3) or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction."

drug charges. On August 4, 1982, the probation was revoked.[2]

Sentence of two concurrent three-year terms for the drug charges was imposed by the circuit court on September 10, 1982. For the period from his arrest in June to the date of sentencing on the drug charges, Beets was given a credit of seventy-eight days in partial satisfaction of the drug sentences.[3]

Beets was confined to the state prison system from September 16, 1982, on the drug convictions. He was returned to the Milwaukee county circuit court on March 23, 1983, on the pending burglary charge, pleaded guilty, and was sentenced to a three-year term in the state prison, with the term to run concurrently wtih the previously imposed drug sentences. Beets was granted seventy-eight days credit toward the satisfaction of this sentence—for the period from June 26, 1982, the date of arrest, to September 10, 1982, the day that Beets commenced his prison sentence on the drug charges.[4]

Beets brought a postconviction motion asking for an amendment to his burglary sentence to grant additional time credit. He asserted that he was entitled to receive creditable time for the period subsequent to his sentencing on the drug charges while he was awaiting, in prison, a hearing on the pending charge of burglary. He asserts that he was entitled to one hundred ninety-two days of additional credit.

[2] The record demonstrates that revocation was in part for failing to report. We, however, treat the revocation as being wholly triggered by the arrest on June 26 on the burglary charge.

[3] In fact, upon sentencing on the two drug charges, Beets was given three hundred three days credit. These credits in part reflect credit to be given for the custody at the time of the initial charges for the drug violations. Seventy-eight days were attributable to his custody status after June 26, 1982.

[4] We do not attempt to determine whether the count of seventy-eight days is precisely correct.

His motion was denied by Judge Manian, and that denial was affirmed in a summary order by the court of appeals on January 31, 1985.

We accepted the petition for review because it appeared to us that the court of appeals had not then settled upon a rationale by published decision for determining sentencing credit cases of this kind. We accelerated the case when it became apparent that, were we to hold that Beets was entitled to the additional claimed credit, he would, in the normal course of our dispositions, be likely to serve more time than permitted by law.

We conclude, however, that he was given the credit to which he was entitled by the statutes.

Beets' position was, and is, that sec. 973.155, Stats. 1981–82, requires the court to grant jail credit for "all days spent in custody in connection with the course of conduct for which sentence was imposed." He contended that, even after his sentence was imposed on the original drug charges, his custody remained at least partly "in connection with" the burglary, because the course of conduct leading to the probation revocation was the burglary and because, during this period, he was awaiting trial and sentencing on the burglary charge.

The trial court denied the motion, reasoning that, once sentence was imposed on September 10, 1982, for the drug convictions, the defendant was in custody serving that sentence, which was unrelated to the burglary charge.

Beets appealed to the court of appeals. The court of appeals affirmed the trial court in a summary order. The court of appeals explained its reasoning in one brief paragraph:

"After September 10, Beets was not in custody as a result of a probation revocation connected with the burglary charge. Rather, he was in custody as a result of the sentence imposed on the drug convictions. The

trial court properly denied the motion for additional sentence credit."

This case essentially requires this court to give meaning to the statutory language of sec. 973.155(1), Stats., "in connection with the course of conduct for which sentence was imposed."

The meaning of the statute is clear. It is simply that credit is to be given on the eventual sentence for all periods of custody: From arrest to trial, the trial itself, and from the date of conviction to sentence. The defendant argues the statute is to be given an additional and different meaning because of the language that credit must be given not only for the time that elapses from arrest to sentencing on a particular charge, but that additional credit is to be given for those same time periods if the confinement is related to the offense for which the offender is ultimately sentenced. Thus, the claim of Beets here is that he was properly given credit for the time he was in the county jail prior to his sentence for the drug offenses—one, awaiting sentencing on the drug charges, and, two, also awaiting trial on the burglary charge. He additionally claims that he should be given credit against the burglary sentence for the time spent in prison serving the drug sentences, because he was also in confinement for the additional reason he was awaiting trial on the burglary charge.

Beets considers it irrelevant that he was in prison as the result of a "sentence" for the drug charges. He reasons, apparently, that his confinement, though for a final sentence (drugs), was "related to an offense for which the offender is ultimately sentenced," because it was the burglary arrest that triggered the revocation of the probation.

True, he had not yet been tried for burglary and in one sense was "awaiting trial" on the burglary charge even though he was confined to prison on the drug

charges. What then does his prior confinement on the drug charges have to do with his confinement awaiting trial? Is the confinement on the drug charges "in connection with the course of conduct for which sentence [for burglary] was imposed"?

In the first place, it would appear plain that the sentence on the drug charges was not related or connected to the burglary course of conduct. As we said in *Flowers v. Department of Health & Social Services,* 81 Wis. 2d 376, 386, 260 N.W.2d 727 (1978), the element of punishment in parole revocation is attributable to the crime for which the parolee was originally convicted and sentenced.

"The sentence he is required to serve upon revocation is the punishment for the crime of which he has previously been convicted . . . . Revocation is thus a continuing consequence of the original conviction from which parole was granted."

We deem this statement equally applicable to probation. Accordingly, any days spent in confinement after the revocation of probation and the imposition of sentence arise out of, and are connected not with the burglary, but with the unrelated conduct which resulted in the drug convictions more than a year earlier. Thus, the offenses are not connected.

There is a temporal connection in this particular case, because it was the burglary arrest that triggered the probation hold on Beets. Thus, for a time, June 26 to September 10, there was a relationship—not between the offenses but between the causes of the initial confinement on two separate charges.[5] The burglary charge initiated the scrutiny into Beets' background that re-

---

[5] The record reveals that Beets was given dual credit for this period, *i.e.,* credit on the burglary charge and also on the drug charges. The propriety of the dual credit is not at issue here. Obviously, Beets is not aggrieved, and the state has not objected. We do not consider the question.

sulted in the probation hold, the revocation, and the ultimate concurrent drug sentences.

The period of time at issue is from Beets' sentence on the drug convictions to the time he was sentenced on the burglary charge. The court of appeals correctly disposed of the claim for credit for this period by simply holding that any connection which might have existed between custody for the drug offenses and the burglary was severed when the custody resulting from the probation hold was converted into a revocation and sentence. From that time on, Beets was in prison serving an imposed and unchallenged sentence; and whether he was also awaiting trial on the burglary charge was irrelevant, because his freedom from confinement—his right to be at liberty—was not in any way related to the viability of the burglary charge. His ability to make bail on the burglary charge became immaterial. Even had the burglary charge been dismissed, he would still have been in confinement. Thus, there is no logical reason why credit should be given on the burglary charge for his service of sentence on a separate crime.

It should be remembered that in our decisional law the origin of the confinement credit was a matter of equal protection, *i.e.*, a person who could not make bail because of indigency was being denied a liberty right that a wealthy person could exercise. *Klimas v. State,* 75 Wis. 2d 244, 249 N.W.2d 285 (1977). Even if not couched in constitutional terms of equal protection, confinement credit is designed to afford fairness—that a person not serve more time than that for which he is sentenced. While the statutory base is broader, there is no justification in the common law, and none expressed in the statute, affording a right to credit against confinement in criminal matters where the period of confinement has nothing to do with the matter for which sentence credit is sought. For there to be a time credit there ought to be some nexus between the events

which is recognized either by the constitution or by the statutes.

This basic position—the rationale utilized by the court of appeals—has been set forth in a published opinion of the court of appeals, *State v. Gavigan*, 122 Wis. 2d 389, 362 N.W.2d 162 (Ct. App. 1984).

There the court held that an offender was not entitled to sentence credit for the time spent in custody awaiting sentence on a robbery charge when he was simultaneously in custody serving a misdemeanor sentence for fleeing the scene of a crime. Gavigan was sentenced on October 24, 1982, on the fleeing charge, and on February 9, 1983, on the robbery charge. He argued that, for the one hundred seven days between those dates, he was entitled to credit on the robbery charge, because, during those days in custody, he was awaiting trial and sentencing on the robbery charge and, thus, was in custody " 'in connection with' the robbery charge."

The court of appeals rejected this argument, stating:

"Once Gavigan pleaded guilty to and was sentenced on the fleeing charge, he was in custody solely for his conviction on that misdemeanor and not, as he argues, partly because of his failure to make bail on the robbery charge. When he began serving the misdemeanor sentence on October 24, Gavigan no longer was eligible to be released on bail for the robbery charge. Thus, we reject his argument that after October 24 his custody was 'in connection with' the robbery charge because the custody was not due to his failure to make bail on the robbery charge, but was attributable solely to his misdemeanor conviction." 122 Wis. 2d at 394.

This position is supported by federal cases interpreting the analogous federal statute, 18 U.S.C., sec. 3568, which uniformly appear to deny defendants credit toward a federal sentence for time in custody spent serving state sentences and simultaneously awaiting federal sen-

tence, even when the state and federal charges were closely related. *Shelvy v. Whitfield,* 718 F.2d 441 (D.C. Cir. 1983); *Culotta v. Pickett,* 506 F.2d 1061 (7th Cir. 1974), cert. denied, 421 U.S. 968; *United States v. Love,* 555 F. Supp. 1041 (D.C. N.D. Calif., 1983); *Mize v. United States,* 323 F. Supp. 792 (D.C. N.D. Miss., W.D. 1971).

We conclude that the same rationale as that expressed in *Gavigan,* which we expressly approve, is applicable and controlling here. We accept the *Gavigan* holding by the court of appeals as precedent for this court.

The defendant, however, makes additional arguments not considered in *Gavigan.* We reject them also.

Beets argues that the plain meaning of sec. 973.155 (1), Stats. 1981–82, requires credit for the period while he was serving time on the drug sentences against the sentence for the burglary, because he claims the imposition of the drug sentences arose out of the course of conduct that led to the burglary charge. Our analysis of *Flowers v. Dept. of H&SS, supra,* we believe, disposes of this argument. The course of conduct was different and unrelated. More importantly, however, Beets would link the two offenses and activate the statute, because the period for which credit is to be given is to "include custody of the convicted offender which is in whole or in part the result of a probation or parole *hold* . . . ." (Emphasis supplied.) Sec. 973.155(1)(b). Here, however, this portion of the statute was in fact given effect, for during the period of the probation "hold" prior to revocation and sentence, the credit was given on both the drug sentences and the burglary sentence. After sentencing on the drug charges, there was no probation hold, and that portion of the statute is, accordingly, inapplicable. The "probation hold" language is irrelevant to the period of concern here.

For the same reason, the note of the Legislative Council to sec. 973.155(1), Stats.,[6] is irrelevant to the present situation. The note restates in less obscure language the statutory provisions of sec. 973.155(1)(b) that the defendant is to receive credit toward a new sentence (as well as the original sentence) for the time spent in custody where the *hold* is imposed for the "same course of conduct as that resulting in the new conviction."

Additionally, Beets argues that the Department of Health and Social Services has interpreted the statute to afford administrative credit where we are now denying it. We do not question the good faith of the department in so doing; but the department, like this court, is bound by the statutes and can grant only such credit as the legislature has seen fit to award. While some persons have perhaps been given credit which was not required by statute, we do not suggest that this opinion be implemented retroactively to the detriment of persons who have been discharged as the result of such windfall credits or to the detriment of those per-

---

[6] "NOTE: New s. 973.155 of the statutes is created and provides that a convicted offender shall be given credit towards the service of his or her sentence for 'all days' spent in custody in connection with the course of conduct for which the sentence was imposed. Such credit is intended to cover all time spent in custody while awaiting trial, during trial and awaiting imposition of sentence after trial. *In addition, such credit would include the time a parolee or probationer spends in custody pending conviction and sentencing on new charges.*" (Emphasis supplied.) Legislative Council Note to 1977 Senate Bill 159, sec. 9.

We find the language of the statute, though difficult to read, not ambiguous. We recite the above council note not because it constitutes legislative history to be resorted to in cases of ambiguity, but because it constitutes what we deem to be an alternative statement of the plain meaning of the statute. It neither adds nor detracts from the rationale of this opinion.

sons for whom such credits have been awarded on or before the release of this opinion.

It is also argued that, unless we give effect to Beets' interpretation of the statute, offenders will delay revocation of the parole or probation until after sentencing on the new charge, and that this will allow persons to manipulate the system to their advantage. We do not attempt to postulate all the variations of such manipulations, but it is clear that, unless the acts for which the first and second sentences are imposed are truly related or identical, the sentencing on one charge severs the connection between the custody and the pending charges. And the consequences of even that contingency is not clear—certainly not decided herein—for the acts underlying the drug charges and the burglary were not related.[7]

We conclude that the trial court correctly credited time only for the period prior to the time Beets' custody commenced on the sentences for the drug offenses. We affirm the court of appeals' decision affirming the circuit court.

*By the Court.*—Decision affirmed.

---

[7] In *State v. Gilbert*, 115 Wis. 2d 371, 340 N.W.2d 511 (1983), we pointed out the assistance afforded to the bench and bar by the Wisconsin Criminal Jury Instructions Committee Special Materials, which seek to explain the requirements of the statutes and to make clearer the holdings of this court. In *Gilbert*, we chose to accept the interpretation given to a portion of sec. 973.155 (1), Stats., by the committee. Because, as we pointed out in *Gilbert*, the special materials are prepared by an exceedingly well qualified group of lawyers, judges, and scholars, we give their interpretations careful scrutiny. Arguably, under the committee's analysis, the interpretation of the effect of sec. 973.155(1) to the facts of this case would be different from ours. We conclude, however, that the holding adopted in this opinion comports with the plain language of the statute and the basic rationale of *Gavigan*. Neither this court nor the committee are infallible, and either interpretation may be corrected by the legislature.