ESTATE OF Raymond HOLT, Deceased, by Nichole
B. Holt, Special Administrator, and Nichole B. Holt,
Plaintiffs-Respondents,

v.

STATE FARM FIRE & CASUALTY COMPANY, K.
William Lynch, and Robert D. Ross, Defendants-
Appellants,

AETNA LIFE & CASUALTY INSURANCE COM-
PANY, Defendant.

Court of Appeals

*No. 88-2111. Submitted on briefs May 18, 1989.—Decided June
21, 1989.*

(Also reported in 444 N.W.2d 453.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *J. Steven Tikalsky* and *Paul G. Bonneson* of *Tikalsky, Raasch & Tikalsky* of Waukesha.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Charles F. Stierman* and *Virginia M. Antoine* of *Habush, Habush & Davis, S.C.* of Milwaukee and *Gordon K. Aaron* of *Axel, Aaron & Goldman* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   This appeal requires us to determine the definition of "pecuniary injury" under our wrongful death statute, sec. 895.04(4), Stats. State Farm Fire & Casualty Company appeals from a judgment holding it liable to Nichole B. Holt for the loss of social security disability payments. The payments were terminated upon the wrongful death of Nichole's husband, Raymond. We affirm, holding that "pecuniary injury" includes loss of social security disability benefits.

Prior to his death, Raymond was drawing monthly social security disability payments of $652 due to a stroke. Nichole and Raymond relied upon these benefits to sustain themselves. These payments were to continue until Raymond reached the age of sixty-five. When Raymond was killed in an accident involving a negligently operated vehicle insured by State Farm, his disability

payments were terminated. The trial court held that the termination of Raymond's social security disability benefits deprived Nichole of income and support, the loss of which constitutes a compensable pecuniary injury under sec. 895.04(4), Stats.

The construction of a statute is a question of law which this court may review independently. *State v. Gavigan,* 122 Wis. 2d 389, 391, 362 N.W.2d 162, 164 (Ct. App. 1984). Furthermore, the application of a statute to a particular set of facts is also a question of law which this court decides without deference to the trial court. *Neis v. Board of Educ.,* 128 Wis. 2d 309, 313, 381 N.W.2d 614, 616 (Ct. App. 1985).

In part, sec. 895.04(4), Stats., provides:

> Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action.

Section 895.04(1) and (2) entitles a surviving spouse of a deceased party to bring an action for wrongful death.

State Farm contends that Raymond's disability payments cannot be used to determine Nichole's pecuniary injury. It cites *Neuser v. Thelen,* 209 Wis. 262, 244 N.W. 801 (1932), in arguing that, under Wisconsin law, a compensable pecuniary injury arises solely from the loss of a decedent's "actual earnings." State Farm maintains that Raymond's social security disability benefits are not actual earnings and that consequently Nichole cannot recover for their loss.

Nichole responds that "actual earnings" is not the single determinant of pecuniary injury. She contends that pecuniary injury involves a financial loss in amount of support which ensues from a wrongful death. She asserts that Wisconsin case law supports a broader con-

struction of the wrongful death statute than that to which State Farm ascribes. In particular, she cites *Ewen v. Chicago & N.W. Ry. Co.,* 38 Wis. 613, 624 (1875), as support.

Our determination is that Nichole is correct. In *Ewen,* a mother relied upon her son's pension benefits for support. Her income was reduced when her son died and the pension benefits terminated. The *Ewen* court held that where a beneficiary has a "reasonable expectation of pecuniary advantage by the relation remaining alive," the disappointment of such expectation is compensable under the statute. *Id.* at 624 (citing *Dalton v. S.E. Ry. Co.,* 93 E.C.L. 296 (1858)). Furthermore, the court in *Ewen* held that if the wrongful death statute disallowed recovery for the loss of pension benefits, it would thereby fail to provide fair and just compensation for pecuniary injury. *See id.* at 625.

Our reading of *Ewen* is that the source of income is not determinative in deciding whether a beneficiary has sustained a pecuniary injury. In *Ewen* the critical question was whether the beneficiary had a "reasonable expectation of pecuniary advantage by the relation remaining alive." *Id.* at 624.

In our case, Raymond's death resulted in a loss of income which would otherwise have inured to Nichole's benefit. Nichole had a reasonable and continuing expectation of pecuniary advantage and support because Raymond's disability payments were to continue until he reached the age of sixty-five. Nichole's expectation was disappointed when Raymond died. Our concern is with the loss of reasonably anticipated income rather than with the source of the benefit. Raymond's inability to

compete in the job market should not preclude Nichole's recovery under the wrongful death statute.

Although *Ewen* is over 100 years old, it retains its vitality. The *Ewen* court wrote:

> [J]uries are not held to any fixed and precise rules in estimating the [pecuniary] damages in this class of cases. If the injuries are pecuniary, they may be compensated, from whatever source they proceed.

*Id.* at 635.

Examination of wrongful death cases since *Ewen* show that the jury can consider many elements in determining the amount of pecuniary loss, not just actual earnings. For instance, in *Maloney v. Wisconsin Power, Light & Heat Co.*, 180 Wis. 546, 547, 193 N.W. 399, 399 (1923), the supreme court held that it was not error to instruct a jury to consider, in addition to lost earnings, "such sum as will equal the value of such support and protection of the wife as the husband would have furnished." In *Keasler v. Milwaukee Elec. Ry. & Light Co.*, 195 Wis. 108, 111, 217 N.W. 687, 688 (1928), the court recognized a "very wide range" of factors which could properly be included in the term "pecuniary injury." We reaffirm the validity of *Ewen* and construe "pecuniary injury" broadly, rather than focusing only upon the "actual earnings" of the deceased. Based upon our reading of the cases, we conclude that the term "pecuniary injury," as used in the wrongful death statute, means a loss of any benefit which the beneficiary would have received from the decedent if the decedent had lived. This includes social security disability benefits.

State Farm presents a "fairness" argument based on the collateral source rule. It argues that since the collateral source rule precludes the introduction of evidence of

460

fringe benefits received by a decedent's beneficiary for the purpose of reducing the beneficiary's wrongful death recovery, then "fairness" requires the court to hold that fringe benefits, such as social security, cannot be offered into evidence for the purpose of enhancing the beneficiary's wrongful death recovery. State Farm cites *McLemore v. Broussard,* 670 S.W.2d 301, 303 (Tex. Ct. App. 1983), for that proposition.

We agree with Nichole that the collateral source rule cannot be applied in the reverse. In wrongful death cases, a defendant is not allowed to introduce evidence of benefits received by the beneficiary from other sources. Nor may a defendant expect the damage award to be reduced by receipt of those benefits. *Wasicek v. M. Carpenter Baking Co.,* 179 Wis. 274, 278, 191 N.W. 503, 504 (1923). The reason for this is that a tortfeasor should not gain the advantage of gratuities which an injured party receives from a third party. The rule holds the tortfeasor liable for his or her own wrong. *See Sambs v. City of Brookfield,* 95 Wis. 2d 1, 19, 289 N.W.2d 308, 317 (Ct. App. 1979), *rev'd on other grounds,* 97 Wis. 2d 356, 293 N.W.2d 504, *cert. denied,* 449 U.S. 1035 (1980).

If we were to apply the collateral source rule inversely, we would allow State Farm to escape liability for a wrong for which it is responsible and we would thereby defeat the purpose of the rule. Reverse application of the collateral source rule would also operate in direct conflict with *Ewen* because the beneficiary would be precluded from full recovery for all pecuniary injuries regardless of their source.

461

We reject the *McLemore* case as poorly reasoned and rule that State Farm's fairness argument must fail.

*By the Court.*—Judgment affirmed.